*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*


| | | |
|---|---|---|
| *UNITED STATES OF AMERICA* | ) | |
| | ) | |
| *v.* | ) | *Criminal No. 08-194-P-S* |
| | ) | |
| *MICHAEL BALOT,* | ) | |
| | ) | |
| *Defendant* | ) | |


*RECOMMENDED DECISION ON MOTION TO SUPPRESS*

Defendant Michael Balot, charged with one count of conspiring to distribute, and possess with intent to distribute, 500 grams or more of cocaine, and aiding and abetting such conduct, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2 (Count One), and four counts of using a communication facility, a telephone, in committing, causing, and facilitating the offense set forth in Count One (Counts Two-Five), *see* Indictment (Docket No. 1), moves to suppress the contents of intercepted telephone communications on the basis that the necessity for the wiretaps through which those communications were intercepted was not adequately established, *see generally* Motion To Suppress Wire Intercept Evidence ("Motion") (Docket No. 10).

In support of his motion, Balot "joins with and concurs with" the motions of his former co-defendants who filed motions to suppress wire intercept evidence, *see id*. at 1, as well as setting forth his own arguments why the government failed to make an adequate showing of necessity for the wire interceptions in question, *see id*. at 2-5. To the extent that he joins in the motions of his former co-defendants, I recommend that the Motion be denied for the same reasons that the court denied their motions. *See generally* Recommended Decision on Motions To Suppress ("Szpyt Decision") (Docket No. 514), *United States v. Szpyt*, Criminal No.

1

08-54-P-S (D. Me. Nov. 9, 2008) (rec. dec., *aff'd* Dec. 19, 2008) (Docket No. 573), incorporated by reference herein. To the extent that he proffers additional arguments in favor of suppression, I recommend that the Motion be denied for the reasons that follow.[1]

## I. Factual Background

I incorporate by reference the findings of fact set forth in the Szpyt Decision. *See* Szpyt Decision at 5-22. In a nutshell, Balot argues that affidavits submitted by United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") special agent Malcolm D. Van Alstyne, Jr., in support of a July 27, 2007, application for a wiretap of the cellular telephone of Robert Sanborn ("First Sanborn Application") and an August 24, 2007, application to continue that wiretap for up to an additional 30 days ("Second Sanborn Application") did not make the requisite showing of necessity for those wiretaps. *See* Motion at 2-5; Szpyt Decision at 5, 13-14. In support of the First Sanborn Application, the government submitted a 40-page affidavit of Van Alstyne ("July Van Alstyne Affidavit"). *See* Szpyt Decision at 5. In support of the Second Sanborn Application, the government submitted a new 38-page affidavit of Van Alstyne ("August Van Alstyne Affidavit"), to which Van Alstyne attached a copy of his July affidavit. *See id*. at 14.

By order dated July 27, 2007, Judge Singal approved the First Sanborn Application. *See id*. at 12. By order dated August 24, 2007, Senior Judge Carter approved the Second Sanborn Application. *See id*. at 16. In authorizing the requested wiretaps, both Judges Singal and Carter found, *inter alia*, that "[t]he application and supporting affidavit have adequately demonstrated that normal investigative techniques have been tried and have failed or had limited success, and reasonably appear unlikely to further succeed if continued." *Id*. at 12, 16.

---

[1] Balot did not seek a hearing on the Motion. *See generally* Motion. In any event, in the circumstances, a hearing is inappropriate. *See* Szpyt Decision at 3-4.

Both wiretap applications were made during the course of a joint investigation between the ATF and the United States Drug Enforcement Agency ("DEA") into the operations of an organization believed to be responsible for distributing significant quantities of cocaine in Maine and elsewhere. *See id.* at 5-6. As of the time of the first wiretap application, investigators had learned that key participants in the organization were members of the Maine chapter of the Iron Horsemen Motorcycle Club ("IHMC"), including Richard W. Szpyt, then the IHMC's president, James E. Weston, Robert L. Sanborn, Balot, and Daniel A. Guarino, all five of whom were named as "target subjects" of the wiretap. *See id.* at 6. As of the time of the second wiretap application, as a result of agents' continued investigatory efforts, including the fruits of the initial wiretap, the list of named target subjects was expanded to 16, including the original five. *See id*. at 14.

## II.  Discussion

### A.  Applicable Legal Standards

The Motion implicates the so-called "necessity" requirement, "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Rivera-Rosario*, 300 F.3d 1, 18 (1st Cir. 2002) (citation and internal quotation marks omitted). An application for an order authorizing the interception of a wire, oral, or electronic communication must include, *inter alia*:

> **(c)** a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> ***
>
> **(f)** where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

18 U.S.C. § 2518(1).

In issuing an order authorizing wiretapping, a judge must, *inter alia*, determine on the basis of the facts submitted by the applicant that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" *Id*. § 2518(3)(c).

To demonstrate necessity, "the government is not required to show that other investigatory methods have been completely unsuccessful, nor is the government forced to run outlandish risks or to exhaust every conceivable alternative before resorting to electronic surveillance." *Rivera-Rosario*, 300 F.3d at 19 (citations omitted). Instead, "the government must demonstrate that it has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." *United States v. López*, 300 F.3d 46, 52 (1st Cir. 2002) (citation and internal quotation marks omitted). Its affidavit in support of a wiretap application "must show with specificity why ordinary means of investigation will fail; conclusory statements without factual support are not sufficient." *Id*. at 53; *see also, e.g., United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir. 1989) "([B]are conclusory statements that normal techniques would be unproductive, based solely on an affiant's prior experience, do not comply with the requirements of section 2518(1)(c).")." Nevertheless, "the issuing court may properly take into account affirmations which are founded in part upon the experience of specially trained agents." *Id*.

In assaying the necessity for a wiretap, the court should consider the nature of the alleged crimes and may give weight to the opinion of investigating agents that, in the circumstances described, other means of investigation were too dangerous and might be counterproductive. *See, e.g., In re Dunn*, 507 F.2d 195, 197 (1st Cir. 1974). "[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone

serve to extinguish the need for a wiretap."  *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000).

"A wiretap authorization order is presumed proper, and the Defendants carry the burden of overcoming this presumption."  *United States v. Mondragon*, 52 F.3d 291, 292 (10th Cir. 1995) (citation and internal quotation marks omitted).  The task of a reviewing court examining a judge's wiretap order in the context of a motion to suppress is to "examine[] the face of the affidavit and decide[] if the facts set forth in the application were minimally adequate to support the determination that was made[.]"  *United States v. Villarman-Oviedo*, 325 F.3d 1, 9 (1st Cir. 2003) (citation and internal quotation marks omitted).  "That is, the sufficiency of the affidavit is to be upheld where the [reviewing] court determines that the issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed."  *López*, 300 F.3d at 53 (citation and internal punctuation omitted); *see also, e.g., Rivera-Rosario*, 300 F.3d at 19 n.23 ("When reviewing a wiretap application, it is not our province to engage in *de novo* review of an application; instead, we test it in a practical and commonsense manner to determine whether the facts which it sets forth are minimally adequate to support the findings made by the issuing judge.") (citations and internal punctuation omitted).

The same standard pertains when the district court "is 'reviewing' the prior district court authorization of a wiretap application in the course of a suppression motion challenging the facial sufficiency of the affidavit."  *Ashley*, 876 F.2d at 1074.  "This inquiry is not rigid or rule-oriented; to the precise contrary, Title III demands a practical, commonsense approach to exploration of investigatory avenues and relative intrusiveness."  *United States v. David*, 940 F.2d 722, 728 (1st Cir. 1991) (citation and internal quotation marks omitted).

## B.  Analysis

Balot argues that the Van Alstyne affidavits fail to show necessity for the Sanborn wiretaps because neither affidavit indicated that any of the targets was arrested and debriefed or that any attempt even was made to interview them.  *See* Motion at 4.  He reasons that:

1.	The July Van Alstyne Affidavit did not allege that the targets of the investigation engaged in counter-surveillance or appeared to be concerned about surveillance, did not indicate that arrest of the three members of the conspiracy who had made undercover sales of drugs would not lead to information meeting the objectives of the investigation, did not state that traditional methods of investigation had been tried and failed, and simply indicated in conclusory form that traditional methods of investigation would not be likely to be successful in meeting the investigation's objectives.  *See id*. at 2.

2.	The August Van Alstyne Affidavit did not indicate that any of the enlarged pool of targets had been arrested and debriefed or even interviewed, or that traditional investigative methods had been tried and failed.  *See id*. at 4.

3.	Van Alstyne seemingly claimed that investigating agents had not tried traditional investigative methods because they were not likely to succeed.  *See id*.  However, he did not explain how this investigation differed from any other drug investigation in which traditional methods succeed.  *See id.*

4.	It is a common investigative technique of the U.S. Attorney's Office to apprehend individuals and convince them, as they are facing minimum mandatory sentences or guideline minimum sentences, to provide information regarding other individuals involved in criminal activity.  *See id*.  Had the government done so in this case, it could have netted three alleged drug

dealers, including Sanborn, who could have provided all of the information that the government needed to dismantle the alleged conspiracy. *See id*. at 4-5.[2]

5.     The affidavits do not support Van Alstyne's conclusions that traditional methods had been tried and failed or that they were unlikely to succeed or too dangerous to try. *See id*. at 5.

Balot's points fail to persuade me to alter my earlier conclusion that the government's applications for the wiretaps in question, supported by the Van Alstyne affidavits, were more than minimally adequate to persuade Judges Singal and Carter that the wiretaps were reasonably necessary. *See* Szpyt Decision at 27. In their motions to suppress wiretap evidence, Weston and another co-defendant, Sherwood K. Jordan, made similar arguments, with Weston contending, *inter alia*, that before obtaining the initial wiretap order, the government was in a position to indict every one of the investigation targets, *see id.* at 25, and Jordan asserting that investigative techniques such as grand-jury subpoenas were not employed until 2007, and then were used only minimally and for a limited period of time, evidencing lack of a good-faith effort to run the gamut of investigative techniques, *see id*. at 26-27. For many of the same reasons that those arguments fell short, Balot's also fail.

Agents involved in the instant investigation had tried a number of traditional investigative techniques before resorting to wiretap applications. *See id*. at 6-7, 14-16. They were not required to exhaust all possibilities before seeking to obtain a wiretap. *See, e.g., id*. at 31-32. Moreover, in his July affidavit, Van Alstyne provided detailed and plausible explanations why certain traditional methods, including further use of the grand jury and interviews of target

---

[2] Balot notes that Sanborn was believed to be the primary source of supply for the other initial targets. *See* Motion at 4.

subjects or their associates, had been considered but rejected. *See id.* at 10-11, 29.[3]  In his August affidavit, he provided a detailed and plausible explanation why agents had conducted only brief interviews with certain individuals arrested in connection with the investigation and had deliberately refrained from attempting to conduct further in-depth proffer sessions with them. *See id.* at 15-16, 32-33.[4]  While these individuals may not have been target subjects, Van Alstyne's affidavit shed light on the pitfalls of such interviews.

In sum, even assuming *arguendo* that arrests and interviews of target subjects typically constitute a fruitful avenue of investigation in drug distribution cases, Van Alstyne's affidavits sufficed to permit Judges Singal and Carter to conclude that agents had good reason in this case to avoid the use of that technique, and that an adequate showing had been made that the technique reasonably appeared to be unlikely to succeed if tried or to be too dangerous.

### III.  Conclusion

For the foregoing reasons, I recommend that the Motion be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[3] These included fear of alerting target subjects to the existence of the investigation, causing them to become more cautious or to relocate, and a belief that the threat of violence, both perceived and real, would deter potential grand jury witnesses from testifying truthfully or at all, in view of information received by agents that some of the target subjects had resorted to violence incident to their drug trafficking activity.  *See* Szpyt Decision at 10-11.
[4] These included fear that such individuals would be likely to give false information or to advise the target subjects of the existence of the investigation, in view of the fact that two individuals arrested as a result of information gleaned from the initial wiretap discussed their arrests with Sanborn.  *See* Szpyt Decision at 16.

Dated this 21st day of January, 2009.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge